In the

# United States Court of Appeals

## For the Seventh Circuit

Nos. 08-3154, 08-3781, 09-1382, 09-1406 & 09-1637

FM INDUSTRIES, INC.,

*Plaintiff-Appellant*,

*v.*

CITICORP CREDIT SERVICES, INC., *et al.*,

*Defendants-Appellees*.

Additional appeals of:

WAYNE D. RHINE
WILLIAM T. MCGRATH

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 07 C 1794—**Suzanne B. Conlon**, *Judge*.

ARGUED NOVEMBER 3, 2009—DECIDED JULY 22, 2010

Before EASTERBROOK, *Chief Judge*, and WOOD and
TINDER, *Circuit Judges*.

EASTERBROOK, *Chief Judge*. FM Industries sued Citicorp
Credit Services for copyright infringement. The copy-
righted work is computer software—"The Ultimate

Collection and Network Software" or TUCANS—designed to help lawyers to collect debts and lenders to monitor how its lawyers are doing. The suit also named the Law Offices of Ross Gelfand, LLC, contending that it continued using the software after Citicorp dropped its license and told outside lawyers to stop using TUCANS. (There were still more defendants, whose dismissal, see 2007 U.S. Dist. LEXIS 90129 (N.D. Ill. Dec. 5, 2007), is no longer contested.) The "copying" in question is the transfer of software from a computer's hard disk to its random access memory, without the permission of the copyright proprietor. Citicorp licensed the TUCANS program, but FM Industries contends that Citicorp did not pay the agreed price and induced its outside debt-collection lawyers to go on using the program (thus making extra copies in computers' memory) after the license expired.

The district court dismissed FM Industries' request for damages because it failed to register the copyright until 2007. "Statutory damages" are available only for infringement after registration, and then only if the registration occurred within three months of the work's publication (2004 for this version of TUCANS). 17 U.S.C. §412; see also *Reed Elsevier, Inc. v. Muchnick*, 130 S. Ct. 1237 (2010). FM Industries never tried to show actual damages. See 2008 U.S. Dist. LEXIS 3575 (N.D. Ill. Jan. 14, 2008). That left questions about prospective relief. Defendants contended that Michael Friedman (FM Industries' president and principal shareholder) owns the copyright as the recipient of assets from FM. Ware Industries, Inc., when it dissolved in 2004. This would imply that the suit must be dis-

missed under Fed. R. Civ. P. 17(a), because not filed in the name of the real party in interest. Defendants also maintained that no infringement was ongoing or in prospect. The district judge concluded that material disputes prevented summary judgment on those questions and set the case for trial. 2008 U.S. Dist. LEXIS 20670 (N.D. Ill. Mar. 17, 2008).

Ownership matters not only under Rule 17 but also because it affects who is entitled to damages. Friedman had filed for bankruptcy and wanted to keep any copyright recovery away from his creditors, prominent among which was Citicorp. FM Industries never did produce a contemporaneous document showing a transfer of ownership to itself, and the district judge was understandably suspicious of an affidavit that Friedman executed while this suit, and his bankruptcy, were under way. See 2008 U.S. Dist. LEXIS 84270 (N.D. Ill. Oct. 21, 2008).

Trial never occurred. Local rules require the parties to cooperate to produce a pretrial order. Northern District of Illinois Local Rule 16.1 Appendix ("Standing Order Establishing Pretrial Procedure") Instruction 6. The plaintiff's lawyer is supposed to produce a draft, which serves as the basis of discussion and modification. Wayne D. Rhine, the principal counsel for FM Industries, did not complete this task on time. When he finally produced a draft, it was egregiously non-compliant. (The problem here, and in much else that went wrong with the case, is that Rhine allowed Friedman, a non-lawyer, to draft many of the papers that were filed over Rhine's name. Rhine insists that he did not simply rent out his law license

but instead reviewed and edited the documents before filing them. We accept that representation, but it also means that Rhine, who resumed legal practice in 2006 after 24 years as a judge of the Circuit Court of Cook County, Illinois, bears the responsibility for amateurish and absurd filings.)

Defendants' lawyers noted the problems, which Rhine promised to fix. But by the date set for the parties to present the joint pretrial order to the court, Rhine had not provided a revision incorporating defendants' contributions. Instead he presented a new draft based on the original deficient one and omitting the defendants' corrections and proposals, despite Rhine's promise to include them. The district judge reminded Rhine of the need to do his duties and warned him that failure would lead to dismissal for want of prosecution. Defense counsel drafted a pretrial order and asked Rhine to suggest modifications. Instead Rhine again tendered a woefully defective product that reflected the work of Friedman rather than anyone who knew what he was doing. Defendants protested; Rhine promised to do better. But at the next status conference in the district court there was no pretrial order to consider. The judge gave up and on May 6, 2008, dismissed the remaining claims for want of prosecution.

Next Rhine filed a motion asking the judge to reconsider and reinstate the claims originally set for trial. While the parties debated the propriety of relieving FM Industries of the adverse decision, defendants continued to request that Rhine prepare a draft pretrial order. By July 23, 2008,

when the judge denied the motion to reinstate the dismissed claims, Rhine *still* had not submitted a draft in anything remotely like the form required and had not begun the process of consultation needed to get from the plaintiff's initial draft to the final joint pretrial order. Rhine's failure to act even with the benefit of this additional time was the district judge's main reason for denying the motion.

Dismayed by what had happened, the district court then ordered FM Industries to pay defendants' legal fees under 17 U.S.C. §505. See *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994); *Riviera Distributors, Inc. v. Jones*, 517 F.3d 926 (7th Cir. 2008). The judge also concluded that Rhine had vexatiously multiplied the proceedings and is liable for attorneys' fees under 28 U.S.C. §1927. The judge made a further award under §1927 against William T. McGrath, a copyright specialist who Rhine had engaged to assist him. McGrath had signed only five of FM Industries' plentiful filings, but the judge deemed him fully responsible—perhaps more so than Rhine, a newcomer to copyright litigation. FM Industries was ordered to pay approximately $750,000 in attorneys' fees under §505. The tab for the two lawyers was smaller, because the district judge deemed only a subset of the filings sanctionable under §1927. They were held jointly and severally responsible for $35,000. See 2009 U.S. Dist. Lexis 9263 (N.D. Ill. Feb. 4, 2009) (consolidated opinion covering most awards of attorneys' fees). A separate order directed Rhine to pay an additional $2,694.60.

FM Industries no longer contests the district judge's conclusion that it is not entitled to damages. But it says

that the judge should have granted partial summary judgment in its favor on the question whether it owns and is entitled to enforce the copyright. That subject is no longer relevant, however, nor does it matter whether the judge should have given FM Industries more time for discovery. Even if the evidence establishes that Friedman transferred the copyright to FM Industries, triable questions remained about whether any defendant was infringing the copyright. So the judge could not have entered summary judgment in FM Industries' favor. And the reason this case did not get to trial is that Rhine bollixed the job of preparing the pretrial order. All other subjects fall out of the picture.

Now represented by different counsel, FM Industries says that pretrial orders aren't all that important and that errors in their preparation shouldn't lead to dismissal. But Fed. R. Civ. P. 16(f)(1)(B) says that, when a party is unprepared to participate in the pretrial conference, a judge may use any of the sanctions mentioned in Fed. R. Civ. P. 37(b)(2)(A)(ii)–(vii). Subsection (v) in this list authorizes "dismissing the action or proceeding in whole or in part". That's what the judge did. (Contrast *Smith v. Chicago School Reform Board of Trustees*, 165 F.3d 1142 (7th Cir. 1999), which reversed a judge for using the sanction specified in Rule 37(b)(2)(A)(i), which is omitted from the authorization in Rule 16(f)(1)(B).)

It is not as if the judge acted precipitately. Rhine's failures were of both commission (bizarre drafts) and omission (producing nothing when a new draft was required, and not using defendants' drafts as the basis

for his own proposals). The judge warned Rhine that failure to produce an appropriate draft and cooperate in negotiation would lead to dismissal. The warning did not work. And the real end did not come until, 11 weeks after the dismissal for want of prosecution, Rhine *still* had not produced a plausible draft pretrial order. A district judge need not wait forever. Eventually a plaintiff's failure to cooperate in the prosecution of its own suit leads to dismissal. The sanction must be proportional to the delict, see *Ball v. Chicago*, 2 F.3d 752 (7th Cir. 1993), but the problem with the pretrial order was just the straw that broke the camel's back. There were many more deficiencies, which surely influenced the dismissal order as well as the substantial awards of attorneys' fees.

Long before dismissing this suit for want of prosecution, the district judge had concluded that FM Industries and its lawyers were playing games, engaged in extortion, or both. They demanded statutory damages of $15 billion, although 17 U.S.C. §504(c)(2) provides that, even for willful infringement, the award cannot exceed $150,000. The theory seems to have been that this limit applies per copy made, and that as computers are very good at copying data, and may move software instructions around in random access memory, every computer using the TUCANS software made multiple copies daily. This is the same flavor of argument that a former judge in the District of Columbia made in support of his demand for $65 million from a laundry that supposedly lost one pair of pants. That claim failed, see *Pearson v. Chung*, 961 A.2d 1067 (D.C. App. 2008), and was widely lampooned. See also *Pearson v. District of Columbia*, 644

F. Supp. 2d 23 (D. D.C. 2009), affirmed, 2010 U.S. App. LEXIS 11055 (D.C. Cir. May 27, 2010). The defendants pointed out that the statutory limit under §504(c) is per copyright ("any one work" is the statutory language) rather than per copy, as well as the fact that the delayed registration made statutory damages unavailable. Rhine and his client were undeterred and filed a blizzard of paper, to which defendants had to respond.

That's not all—and not even the worst of it. Although Rhine never produced a plausible draft of a pretrial order, and exceeded many other time limits in the litigation, when defendants missed *one* discovery deadline, and by a single day, FM Industries moved for sanctions. It wanted cash compensation for the injury caused by this delay. How much? It demanded $815 million! The defendants and the district judge were not amused, but defendants had to devote substantial time (and thus expense) to responding, because if the judge were prepared to award even a tiny fraction of the request the outlay would be considerable.

FM Industries served extensive discovery demands on several law firms that are not parties to the suit but work as outside counsel for Citicorp in collecting debts. Rhine did not pay any attention to Fed. R. Civ. P. 45, which tells litigants how to obtain information from nonparties. Nor did Rhine notice that the right venue for nonparty discovery is a court with personal jurisdiction over each entity. A federal district court's subpoena power in most civil litigation runs only within its district (or 100 miles from its courthouse, if that is farther). See Rule

45(b)(2)(B). After serving blunderbuss demands without regard to the rules, forcing the recipients to incur legal expenses to learn what obligations they had (none, as it turns out), FM Industries simply walked away when informed that all of the demands that it had served were ineffectual. It did not follow up with proper subpoenas.

This was extortionate discovery, the kind a litigant undertakes when it hopes to be paid to go away and spare opponents the expense of vindicating their rights. FM Industries' attempt to force Charles Prince, then the chairman of Citigroup's board of directors, and Sanford Weill, his predecessor, to submit to depositions, even though they had nothing to do with Citicorp's use of TUCANS, is further evidence that FM Industries and its lawyers were engaged in an abuse of legal process.

There is more, but extending this recitation would not serve much purpose.

As for attorneys' fees: None of the appellants questions the reasonableness of the amounts. They contend only that the district judge should not have awarded any fees at all. Yet a defendant that prevails in copyright litigation is presumptively entitled to fees under §505. See *Mostly Memories, Inc. v. For Your Ease Only, Inc.*, 526 F.3d 1093, 1099 (7th Cir. 2008). Damages and equitable relief encourage copyright proprietors to enforce their rights, whether or not they get attorneys' fees too. A defendant who prevails in copyright litigation vindicates the public's interest in the use of intellectual property, but without an award of fees the prevailing defendant has only losses to show for the litigation. Defendants in

this suit incurred substantial expense to beat back a series of preposterous claims ($15 billion in statutory damages indeed!) and are entitled to be made whole. Not that FM Industries is apt to pay, but defendants are entitled to what they can collect from any unencumbered assets they can find. (Defendants stand in line behind FM Industries' secured creditors.) See 656 F. Supp. 2d 795 (N.D. Ill. 2009) (discussing some of the problems one defendant has encountered trying to collect).

Rhine contends that he did not "multiply" the proceedings, and therefore should not have been sanctioned under §1927, but the district court's award is sound. See *In re TCI Ltd.*, 769 F.2d 441 (7th Cir. 1985). This litigation was marked by excessive and unnecessary filings that richly deserve the label vexatious. Rhine's objections are quibbles. He contends, for example, that he did not demand $15 billion in damages—a stupendous figure that led defendants to generate far more paper, and endure higher legal bills, than any plausible claim would have warranted. No, Rhine insists, all he did was demand that defendants and the court use a formula that worked out to $15 billion. The fact that the phrase "$15 billion" does not appear in a complaint is irrelevant. A complaint that demands $150,000 (the statutory cap) times 100,000 (the complaint's estimate of the number of times computers copied the software into random access memory) is demanding $15 billion. Even lawyers can multiply two numbers. And the fact that this sum is, in the words of Rhine's appellate brief—he is representing himself and testing the adage that a lawyer who does this has a fool for a client—"one prayer for relief, out of many, and

based on certain possible scenarios" does not help. One other prayer "out of many" was for statutory damages of $7.2 million ($150,000 times 48, the number of outside law firms that used the software), which is no more tenable than $15 billion. Another demand was for $235 million in actual damages, which plaintiff never attempted to prove and now has abandoned. No more need be said about the award against Rhine.

McGrath, by contrast, did not sign the complaint, demand $815 million as a discovery sanction, insist that Sanford Weill appear for a deposition, foul up the process of preparing a pretrial order, or take any of the other steps that led to the sanction against Rhine. True, he filed an appearance for FM Industries and signed five papers, but the district court did not find that any of those five vexatiously multiplied the proceedings. Indeed, neither the magistrate judge (who recommended sanctions) nor the district judge identified a single thing that McGrath did wrong. He seems to have been sanctioned for making the mistake of agreeing to help a careless lawyer (Rhine) who put his name to frivolous and malicious documents drafted by a self-interested layman (Friedman), and then not reviewing all of the documents that Friedman prepared for Rhine's signature. But of course McGrath was not engaged as a second-tier reviewer of Friedman's scribbling; he was engaged to help Rhine get his bearings in copyright law. That McGrath failed at this task does not make him responsible for documents that bear Rhine's name but not his own.

Liability under §1927 is direct, not vicarious. See *Claiborne v. Wisdom*, 414 F.3d 715, 722–24 (7th Cir. 2005)

(liability is restricted to the misbehaving lawyer and may not be transferred to his partners or law firm). At oral argument defendants contended that McGrath could be held liable because he did not prevent Rhine from filing unreasonable and vexatious documents. Well, McGrath was not hired to do that, and no lawyer undertakes such a role for free. Section 1927 does not require every lawyer who files an appearance to review and vet every paper filed by every other lawyer. Neither the text of §1927, nor any decision of which we are aware, imposes on any lawyer a duty to supervise or correct another lawyer's work. Nor did the district court give this as a reason for the award against McGrath. We appreciate that the judge was disgusted by the behavior of FM Industries and its counsel, but personal responsibility remains essential to an award of sanctions under §1927.

The decision awarding sanctions against McGrath is reversed. All of the district court's other decisions are affirmed.