**MJS LAS CROABAS PROPERTIES, INC., a/k/a Ocean Club at Seven Seas, Debtor.**

**Castellanos Group Law Firm, L.L.C., Appellant,**

v.

**Federal Deposit Insurance Corporation, as Receiver for Westernbank Puerto Rico, and Wilfredo Segarra Miranda, Chapter 7 Trustee, Appellees.**

**BAP NO. PR 15–036**
**Bankruptcy Case No. 12–05710–ESL**

United States Bankruptcy Appellate Panel of the First Circuit.

February 17, 2016

404

Alfredo A. Castellanos Bayouth, Esq., on brief for Appellant.

Jeffrey A. Sandell, Esq., Manuel Fernández–Bared, Esq., and Brian M. Dick–Biascoechea, Esq., on brief for Appellee, Federal Deposit Insurance Corporation, as Receiver for Westernbank Puerto Rico.[1]

Before Feeney, Deasy, and Cary, United States Bankruptcy Appellate Panel Judges.

Cary, U.S. Bankruptcy Appellate Panel Judge.

Castellanos Group Law Firm, L.L.C. (the "Castellanos Firm") appeals from the following bankruptcy court orders: (1) the March 13, 2015 order imposing sanctions against the firm (the "March 2015 Order");[2] and (2) the May 27, 2015 order quantifying the amount of the sanctions (the "May 2015 Order") (collectively, "the Orders"). For the reasons discussed below, we **AFFIRM** the Orders.

## BACKGROUND

MJS Las Croabas Properties, Inc. (the

---

1. The appellee, Wilfredo Segarra Miranda, Chapter 7 Trustee (the "Trustee"), has joined in the brief of Federal Deposit Insurance Corporation.

2. Although the court imposed sanctions on Anabelle Quiñones–Rodriguez ("Quiñones–Rodriguez") and the Castellanos Firm, jointly and severally, pursuant to the March 2015 Order, Quiñones–Rodriguez did not appeal either of the Orders.

"Debtor") [3] filed a voluntary chapter 11 petition on July 19, 2012. Thereafter, Quiñones–Rodriguez filed duplicate notices of appearance in the main case and an adversary proceeding on behalf of a creditor, indicating she was a lawyer "from the law firm of Castellanos & Gierbolini." [4] On September 12, 2013, the bankruptcy court converted the case to chapter 7; several days later, the Trustee was appointed.

On August 14, 2014, Quiñones–Rodriguez filed a motion for relief from stay pursuant to § 362 [5] (the "Relief Motion") on behalf of a different creditor, the Homeowners Association of the Development (the "HOA"), [6] seeking authorization "to present a complaint before the Department of Consumer Affairs against the [D]ebtor for [ ] construction defects" relating to the Development. Her signature on

the Relief Motion indicated that Quiñones–Rodriguez was a lawyer with the Castellanos Firm. On August 15, 2014, the bankruptcy court issued a summons, scheduling the Relief Motion for a hearing at 9:00 A.M. on September 9, 2014 (the "September 2014 Hearing").

Thereafter, on August 19, 20, and 21, 2014, Manuel Fernández–Bared ("Fernández–Bared"), a lawyer from the firm of Toro, Colón, Mullet, Rivera & Sifre, P.S.C. ("Toro Colón") serving as local counsel for the FDIC, telephoned Quiñones–Rodriguez to resolve the FDIC's concerns regarding the Relief Motion prior to the September 2014 Hearing. [7] In each instance, the person who answered the phone informed Fernández–Bared that Quiñones–Rodriguez was unavailable; each time, Fernández–Bared left a mes-

---

**3.** The Debtor is a real estate company formed in 2004 for the purpose of purchasing real property and constructing residential units for marketing and resale to third parties in a development located in Fajardo, Puerto Rico, known as "The Ocean Club at Seven Seas" (the "Development"). Pre-petition, Federal Deposit Insurance Corporation, as receiver of Westernbank Puerto Rico (the "FDIC"), filed a complaint against the Debtor and others in the U.S. District Court for the District of Puerto Rico, Case No. 3:12–cv–01187–JAF, seeking a receiver and payment of the outstanding debt of approximately $20,000,000.00 (which was secured in part by the Development and the guarantees of individuals listed in the complaint). The court appointed Trigild, Inc. ("Trigild") to serve as receiver and manage the unsold properties. The bankruptcy court's docket reflects that the bankruptcy court entered orders effectively maintaining the district court receivership even post-conversion. *See TD Bank, N.A. v. LaPointe (In re LaPointe)*, 505 B.R. 589, 591 n. 1 (1st BAP Cir.2014) (stating "we may take judicial notice of the bankruptcy court's docket and imaged papers") (citation omitted). On July 31, 2014, judgment entered in the district court case, thereby closing the case, subject to reopening upon the conditions stated in the judgment.

**4.** The Castellanos & Gierbolini Law Firm subsequently became the Castellanos Group Law Firm, L.L.C.

**5.** Unless expressly stated otherwise, all references to "Bankruptcy Code" or to specific statutory sections shall be to the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. §§ 101, *et seq.* All references to "Bankruptcy Rule" shall be to the Federal Rules of Bankruptcy Procedure, and all references to "Rule" shall be to the Federal Rules of Civil Procedure. "Section 1927" or "§ 1927" shall refer to 28 U.S.C. § 1927.

**6.** The HOA is the "administrator" of the Development.

**7.** Puerto Rico Local Bankruptcy Rule ("P.R.LBR") 4001–1(h) provides: "If the motion for relief from stay is contested, counsel for the parties must confer with respect to the issues raised in the motion, in order to determine whether a consent order may be entered and/or to stipulate to relevant facts." Although the FDIC and the Trustee's communication efforts appear to be an attempt to comply with the local rule, neither the parties nor the bankruptcy court cited the rule in the proceedings below, nor do the parties reference the rule on appeal.

sage, asking Quiñones–Rodriguez to return his call. His phone calls went unreturned and unacknowledged. In addition, the Trustee and Trigild telephoned Quiñones–Rodriguez several times, without success.

Unable to reach Quiñones–Rodriguez by email or telephone, the FDIC filed a motion for extension of time on August 27, 2014, seeking seven additional days to communicate with the HOA and/or to respond to the Relief Motion. On August 28, 2014, Trigild also filed a motion for extension of time, similarly requesting a seven-day extension in order to make a final effort to speak with the HOA's counsel or, if necessary, to file a response to the Relief Motion. The following day, the Trustee likewise filed a motion, seeking nine additional days to file an opposition to the Relief Motion. In the absence of any objection or response from the HOA, the bankruptcy court granted the three motions, directing the FDIC and Trigild to respond to the Relief Motion by September 4, 2014, and the Trustee to respond by September 8, 2014.

On August 29, 2014, the FDIC, through another of its local attorneys, Brian M. Dick–Biascoechea ("Dick–Biascoechea"), attempted to communicate with Quiñones–Rodriguez via telephone, in yet another effort to discuss the Relief Motion prior to the September 2014 Hearing. Quiñones–Rodriguez was "unavailable" to take the call. Dick–Biascoechea immediately followed up the call with an email to Quiñones–Rodriquez, stating:

> My name is Brian Dick[–]Biascoechea, I represent the FDIC as receiver for Westernbank in the bankruptcy case of MJS Las Croabas, developer of [the Development]. I would like to speak with you as soon as possible concerning your client's request for relief from stay. I

called your office today but was not able to reach you. Brother counsel Manuel Fernández[-]Bared has also tried contacting you on several occasions since you filed the motion for stay relief, to no avail.

> Undeniably, all parties, as well as the Court, will benefit from a discussion of your client's objectives and your understanding of the law in this matter. It is in all our interests to dissipate any disagreements regarding your request before the FDIC, Trigild and the Trustee contest your motion next week. Per our motion for extension of time filed on August 27, 2014, the Court is already aware that we are trying to contact you for these purposes.

> Let us know what time you can speak, or, simply give me a call using the contact information below.

Dick–Biascoechea did not receive any form of response to his email.

Subsequently, on September 3, 2014, Trigild's attorney emailed Quiñones–Rodriguez, stating:

> We are writing on behalf of Trigild, Inc. We have tried to reach you at your office several times, however we have not received any response. Trigild has some concerns with the HOA's Motion for Relief from Automatic Stay that we would like to discuss without having to object to the HOA's motion. Trigild has until tomorrow to file its opposition to HOA's motion, therefore we hope to receive a response from you before then.

That email produced no response.

Unable to resolve its concerns regarding the Relief Motion by telephone, the FDIC filed a twelve-page opposition to the Relief Motion (the "FDIC's Opposition") by the September 4, 2014 deadline, five days before the September 2014 Hearing.[8] It argued:

---

8. The attorney responsible for the filing of the FDIC's Opposition was Jeffrey Sandell

Over the past three weeks, the FDIC–R has repeatedly called and e-mailed the HOA's counsel in a genuine, honest, and good faith effort to resolve various defects inflicting [sic] the HOA's Motion for Relief. The HOA's counsel, however, has refused to respond to a single message or otherwise speak with undersigned counsel. Accordingly, in order to protect its interests, which arise, in part, from its timely-filed proofs of claim totaling more than $54 million, the FDIC–R has no choice but to file this objection and point out that the Motion for Relief is improper, fatally flawed for numerous independent reasons, and must be denied.

(footnote omitted). Trigild immediately joined the FDIC's Opposition, stating, in relevant part:

Trigild has tried to contact HOA's counsel several times, has left several messages, additionally we sent an email to HOA's counsel informing her that we wanted to discuss some of Trigild's concerns. However we haven't received any response.

Several days passed, and the HOA's counsel continued to ignore the communications from the FDIC, the Trustee, and Trigild. However, on September 8, 2014, at 4:51 P.M., while Sandell was traveling by plane from Dallas, Texas to San Juan, Puerto Rico to attend the September 2014 Hearing, Quiñones–Rodriguez unexpectedly filed a terse motion to withdraw the Relief Motion and "vacate" [sic] the hearing (the "Withdrawal Motion"), offering no explanation for this change of course.

Accordingly, at 6:52 A.M. on the morning of the September 2014 Hearing, the FDIC filed a response to the Withdrawal Motion (the "FDIC's Response to the Withdrawal Motion"), wherein it: (1) requested the entry of an order pursuant to the bankruptcy court's inherent authority, directing both the HOA and the [Castellanos Firm] to pay the FDIC's expenses and costs incurred in connection with the filing of the FDIC's Opposition and travelling to the hearing (the "FDIC's Sanctions Request"); (2) urged the court to proceed with the hearing; and (3) requested five additional days to prepare a bill of costs, itemizing the expenses and costs it incurred as a result of "the misconduct of [the] HOA and [the Castellanos Firm]." The FDIC maintained that Sandell "had no choice but to prepare and file [an] extensive response ... and fly from Dallas, Texas to San Juan, Puerto Rico" to attend the September 2014 Hearing because the [Castellanos Firm] "categorically refused to respond to any communications concerning the [Relief Motion]."

At the hearing which ensued shortly thereafter, the HOA, the Trustee, and the FDIC appeared by counsel.[9] At the outset of the hearing, the court acknowledged the withdrawal of the Relief Motion, observed that there would have been grounds to deny the motion, and ruled that the FDIC's request to proceed with the hearing was moot. Then, in support of the FDIC's Sanctions Request, Sandell argued that the HOA refused to respond to "dozens of voice messages" and "several e-mails" from Trigild and the FDIC. On behalf of the HOA, Quiñones–Rodriguez

("Sandell"), whose signature line indicated that his office is located in Dallas, Texas.

9. Quiñones–Rodriguez appeared for the HOA; Eldia Díaz Olmo appeared on behalf of the Trustee; Sandell and Fernández–Bared appeared for the FDIC; and Wilnerys Álvarez–

Rivera appeared on behalf of Trigild. No appearance was entered on behalf of the Castellanos Firm, even though the FDIC's Response to the Withdrawal Motion contained, inter alia, a request for the imposition of sanctions against the firm.

countered: "[W]e are in the process of moving our offices, so our communications are interrupted right now. All the files are packed, ... we have an answering service, but we don't have an office per se, so that might account for our lack of communication."

The court explicitly granted both the Castellanos Firm and Quiñones–Rodriguez additional time to respond to the FDIC's Sanctions Request and indicated it was inclined to view the allegations of the FDIC and Trigild favorably:

> So when you answer the motion by the FDIC and if there are any allegations to be made by counsel or by the persons involved in this matter, that they be under sworn statements under penalty of perjury, in opposition to the motion.
>
> Depending on what the response is, I may or may not schedule a hearing and I will determine if the matter should be decided on the pleadings. But definitely, prima facie, after I read the—I can advance to you that after I read the oppositions both by the FDIC and Trigild, as a matter of law, I thought that they proceeded.
>
> Second, if that—if failure to answer calls prompted the respondents to incur expenses, they should be compensated.
>
> I am advancing that that's how I see it, but I will not make any final determination until I hear your written response, because as a matter of due process, I think you should be given time to re-

spond to the allegations which, in my opinion, are serious allegations.

On September 19, 2014, the Trustee filed a motion, "joining" the FDIC's Response to the Withdrawal Motion (the "Trustee's Sanctions Request") and representing that he had attempted to contact Quiñones–Rodriguez on at least three occasions, to no avail. The Trustee further asserted that the conduct of both the HOA and its counsel demonstrated "bad faith" and "unnecessarily increased administrative expenses of the estate." Maintaining that Rule 11,[10] § 1927,[11] and the court's inherent power permitted the court "to correct and to discipline conduct by counsel and parties," the Trustee sought: (1) the imposition of sanctions against the HOA and its counsel, jointly and severally; (2) a determination that the withdrawal of the Relief Motion was "with prejudice"; and (3) a five-day period (from the entry of the order) to submit evidence in support of his fee application.

On October 2, 2014, absent objection, the bankruptcy court entered two orders–one granting the FDIC's Sanctions Request, and the other granting the Trustee's Sanctions Request (collectively, the "October 2014 Sanctions Orders"). The same day, the HOA immediately filed an emergency motion to vacate the October 2014 Sanctions Orders, on the grounds that they were entered prematurely.[12] Later on October 2, 2014, the HOA filed an amended motion to vacate (the "Amended Motion to Vacate"),[13] reiterating the allegations of

---

10. Rule 11 is applicable to bankruptcy proceedings by virtue of Bankruptcy Rule 9011. *See* Fed. R. Bankr. P. 9011. It provides, inter alia, that by signing and filing a document with a court, a party certifies certain matters and can be subject to sanctions should a court determine that the certification has been violated.

11. *See* p. 25, *infra,* for the text of § 1927.

12. The Castellanos Firm did not join in the motion to vacate, nor did it file an independent motion to reconsider or vacate the October 2014 Sanctions Orders, despite the imposition of joint and several liability upon the firm.

13. Again, the Castellanos Firm did not join in the Amended Motion to Vacate.

the original motion, and adding several attachments, including its Motion in Opposition to Request for Sanctions (the "HOA's Opposition to Sanctions") and unsworn statements of Quiñones–Rodriguez, Alfredo Castellanos Bayouth ("Castellanos"), and Elga Albino Acosta ("Albino Acosta"). The Amended Motion to Vacate was filed on behalf of the HOA by Quiñones–Rodriguez, whose signature line indicated that she was a lawyer with the "Castellanos & Gierbolini Law Firm."

In the HOA's Opposition to Sanctions, it argued: (1) law firms are not responsible for the signatures of their attorneys; (2) the imposition of sanctions under § 1927 requires a finding of bad faith and vexatious conduct; (3) counsel for the FDIC could have appeared telephonically to avoid travel costs; (4) neither the FDIC nor the Trustee "exhausted" their remedies by sending a letter to opposing counsel, "explaining what they consider[ed] frivolous"; and (5) "defending or prosecuting a lawsuit" was a "valid exercise of its First Amendment rights." Accordingly, the HOA asked the court to vacate the October 2014 Sanctions Orders.

In her unsworn statement, Quiñones–Rodriguez indicated, inter alia, that: (1) she was an "independent contractor" and counsel for the HOA; (2) she had rendered professional legal services on behalf of "Alfred Castellanos, [d/b/a] Castellanos & Castellanos Law Firm, Castellanos & Gierbolini Law Firm and ... now Castellanos Group Law Firm, L.L.C.," for nearly four years; (3) the Relief Motion was filed "after careful consideration ... and after multiple communications with the HOA"; (4) beyond the request for a certain expert's report, she knew of only one other communication from the moving parties relating to the Relief Motion; (5) she was

unaware that the FDIC's attorney was traveling from Dallas for the September 2014 Hearing when she filed the Withdrawal Motion; (6) the HOA instructed her to file the Withdrawal Motion; and (7) she was surprised to learn that the September 2014 Hearing was going forward.

In his unsworn statement, Castellanos represented: (1) he was the "owner and founding member" of the Castellanos Firm; (2) he was not the attorney of record for the HOA; (3) he "never received any communication from any of the attorneys that represent the FDIC or the Trustee regarding this case"; (4) it was not his "practice to be unavailable to communicate with opposing counsel"; (5) sanctions, if any, should be imposed upon the FDIC and the Trustee for making "heinous accusations"; (6) the court should warn the FDIC against submitting "future filings ... intended to deprive parties and litigants of their First Amendment rights"; and (7) the court should strike the FDIC's Response to the Withdrawal Motion from the docket.

Albino Acosta asserted in her unsworn statement that: (1) she had been the administrative assistant for "Alfredo Castellanos, [d/b/a] Castellanos & Castellanos Law Firm, Castellanos & Gierbolini Law Firm and ... now Castellanos Group Law Firm, L.L.C." for nearly four years; (2) she was responsible for answering "most if not all" of the firm's incoming phone calls and "channeling ... all written notifications"; (3) as of October 2, 2014, she had not received any phone call, email, letter, or fax from any of the attorneys for the FDIC or from the office of the Trustee; and (4) the allegations contained in the FDIC's Response to the Withdrawal Motion and the Trustee's Sanctions Request were untrue.[14]

---

14. Neither Quiñones–Rodriguez nor Castella- nos requested, on behalf of themselves or the

The HOA simultaneously filed a Motion Requesting Leave to File Documents, explaining that it filed the HOA's Opposition to Sanctions as an exhibit to the Amended Motion to Vacate because the "CM/ECF system did not allow [it] to file the opposition separately." Accordingly, the HOA requested leave to "file the Opposition to Motion for Sanctions separately with the accompanying exhibits."

On October 7, 2014, the court granted the HOA's request to file an opposition to the pending sanctions requests, but instructed it to comply with P.R. LBR 9013–1(c).[15] Accordingly, on October 8, 2014, Quiñones–Rodriguez re-filed the HOA's Opposition to Sanctions as a separate document, this time indicating that she was from the "Castellanos Group Law Firm."

On October 10, 2014, Quiñones–Rodriguez filed on behalf of the HOA a motion for clarification relating to the October 7, 2014 order, again indicating her affiliation with the "Castellanos Group Law Firm." She argued:

> It is the HOA's understanding by what is stated in the Generic Order issued on October 7, 2014 that our Amended Motion to Vacate Order was implicitly granted by allowing the filing of the opposition to motion for sanctions.
>
> [ ] However, and out of an abundance of caution, HOA respectfully requests from this Honorable Court to clarify the Order issued under ECF No. 507 [ (Order Granting Leave to File Documents) ] or in the alternative, to issue a separate

Order regarding our petition to Vacate Orders issued under ECF Nos. 500 and 501.

On October 16, 2014, the bankruptcy court entered an order vacating the October 2014 Sanctions Orders (the "Order Vacating Sanctions"), ruling as follows:

> Contrary to HOA's assertion, permitting it to file an opposition does not in the least equate to vacating an order. Therefore, the *Motion to [C]larify* (Docket No. 512) on that premise is hereby denied. Notwithstanding, because the October 2, 2014 orders (Docket Nos. 500 and 501) were entered prematurely, the court hereby grants the *[Amended]Motion to Vacate* (Docket No. 503). Therefore, the orders entered on October 2, 2014 are hereby vacated and set aside.
>
> Furthermore because the *Opposition to Request for Sanctions* (Docket No. 508) does not contain the objection language required in [P.R.] LBR 9013–1(c) as cautioned by the court, the FDIC and the Trustee are hereby granted 21 days to file replies to HOA's opposition to the requests for sanctions.

On October 28, 2014, the Trustee responded to the HOA's Opposition to Sanctions, arguing that: (1) the Relief Motion failed to set forth sufficient grounds to determine whether cause existed to lift or modify the automatic stay; (2) the HOA's counsel "neglected to adequately explain how she complied with the requirements of [Bankruptcy Rule] 9011" before filing the

---

Castellanos Firm, an evidentiary hearing to address the assertions that Quiñones–Rodriguez had received only one message, that Albino Acosta had never received any communications from the FDIC or the Trustee, or that Castellanos had never received any communication from any of the attorneys for the FDIC or the Trustee. Accordingly, the Panel will not consider the statements of Quiñones–Rodriguez, Albino Acosta, or Castellanos.

**15.** P.R. LBR 9013–1(c) provides that "[a]dequate notice must be given to interested parties of the time to respond to every motion, application, or objection to exemption." The rule further provides that the notice language must be "substantially similar" to the language provided therein. P.R. LBR 9013–1(c).

Relief Motion; (3) the HOA's claim against the Debtor, if any, was time-barred; and (4) the HOA's counsel "failed to provide any evidence that she made a *pre-filing* reasonable inquiry to determine whether [the] HOA had a colorable claim and that 'cause' existed to lift the stay." Additionally, the Trustee challenged the statement of Albino Acosta, highlighting that she was responsible for answering *"most,* if not all," of the Castellanos Firm's calls. Moreover, the Trustee attempted to discredit Albino Acosta's statement that she had not received any phone calls from the office of the Trustee:

> That denial serves no purpose since, as stated in open court at the September 9th hearing, the various calls to Atty. Anabelle Rodriguez were made from the office of the undersigned as counsel for Trustee, not from the office of the Trustee himself.

Accordingly, the Trustee requested that: (1) the withdrawal of the Relief Motion be deemed to be with prejudice; (2) costs and attorneys' fees be imposed upon the HOA and its counsel, jointly and severally; and (3) the court grant a five-day period for the submission of evidence regarding his fees.

On October 30, 2014, Quiñones–Rodriguez filed a motion for reconsideration (the "Reconsideration Motion") of the Order Vacating Sanctions on behalf of the HOA, challenging as excessive the 21–day period which the court afforded to the FDIC and the Trustee for responding to the HOA's Opposition to Sanctions. Accordingly, she asked the court to strike as untimely any response to the HOA's Opposition to Sanctions which might be filed by the Trustee or the FDIC. The FDIC filed an objection to the Reconsideration Motion.

Thereafter, on November 6, 2014, the FDIC filed a response to the HOA's Opposition to Sanctions (the "FDIC's Reply to HOA's Opposition"), chronicling all of the unanswered calls and emails which the FDIC had directed to Quiñones–Rodriguez, as well as to Castellanos. This time, the FDIC specified that the doctrine of inherent powers, Bankruptcy Rule 9011, and/or § 1927, authorized the imposition of sanctions against both the HOA and its counsel.

The FDIC addressed each of the alleged sources of the court's sanctioning power in turn. As grounds for the imposition of sanctions under the court's inherent authority, the FDIC reiterated that: (1) the Relief Motion lacked support; (2) the HOA failed to respond to the FDIC's efforts to reach an out-of-court resolution of the Relief Motion; (3) the HOA failed to notify the FDIC that it planned to file the Withdrawal Motion; and (4) the HOA's counsel behaved in a manner inconsistent with the responsibilities of an officer of the court.

The FDIC next presented its argument under Bankruptcy Rule 9011, stating that the "standard for deciding whether sanctionable conduct has occurred [under the Rule] is objective: did the attorney make a reasonable inquiry into the facts and law before signing and presenting the offending document?" Answering this question in the negative, it maintained:

> A quick look at the docket would have revealed to the HOA that the FDIC–R has a lien over all of the debtor's assets, covering their entire value. Even if the HOA had established "cause" to lift the stay . . ., the HOA would have accomplished nothing. All of the proceeds from the property would satisfy secured creditors first. The [Relief Motion] was not only meritless, but pointless.

The FDIC further contended that under Rule 11(c), law firms may be jointly responsible for violations committed by its partners, associates, and employees, absent "exceptional circumstances."

The FDIC then asserted that the HOA violated § 1927 by "filing ... a motion that had no legal justification whatsoever, and then steadfastly refus[ing] to discuss a resolution of the motion with anyone." Additionally, the FDIC rejected the HOA's First Amendment argument, asserting that the Constitution does not authorize the HOA "to do as it pleases without regard to the cost to other parties."

Without a further hearing, the bankruptcy court entered the March 2015 Order, which it memorialized in a 23–page memorandum. *See In re MJS Croabas Props., Inc.*, 530 B.R. 25 (Bankr.D.P.R. 2015). As a preliminary matter, the court denied the Reconsideration Motion, explaining that "due process" supported the 21–day response time it afforded the FDIC and the Trustee. *Id.* at 35. The court went on to examine the challenged conduct through the lens of each alleged source of its sanction authority, beginning with a Bankruptcy Rule 9011 analysis. *Id.* at 36. It ruled:

> Ms. Anabelle Quiñones[-]Rodr[i]guez's failure to respond to the emails sent to her by the FDIC and Trigild caused "unnecessary delay" and "needless increase in the cost of litigation" in contravention of Fed. R. Bankr. P. 9011(b)(1). The court further finds that her assertion that "there was no apparent need to call counsel from [sic] the parties to communicate to them [her] filing" hours away from the September 9, 2014 hearing, in spite of the emails sent by the FDIC and Trigild to that effect constitutes lack of "reasonable professionalism" and courtesy. *In re Terrón Hernández*, 513 B.R. [172,] 179 [ (Bankr.D.P.R.2014) ], quoting *In re D.C. Sullivan Co.*, 843 F.2d 596, 598–599 (1st Cir.1988). Such actions, in the to-

tality of circumstances, were unduly "costly, burdensome [to the FDIC and to Trigild] and unnecessary." *Zagano v. For[d]ham University*, 720 F.Supp. [266,] 268 [ (S.D.N.Y.1989) ]. In addition, her unapologetic attitude at the September 9, 2014 hearing and her subsequent motions and briefs shows intransigence, which is inconsistent with the requirements that pleadings not be presented "for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation" and that claims be "warranted by existing law." Fed. R. Bankr. P. 9011.

*Id.* at 39 (footnote omitted).

Noting that Congress amended Bankruptcy Rule 9011 in 1997 to make law firms jointly responsible for violations committed by the firm's partners, associates, and employees, the court sanctioned the Castellanos Firm and Quiñones–Rodriguez, jointly and severally [16] The court reasoned that the Castellanos Firm failed to allege or demonstrate any extraordinary circumstances which would insulate it from liability under Bankruptcy Rule 9011(c)(1)(A).

The court then proceeded with its § 1927 analysis, noting that the statute's purpose is "to deter unnecessary delays in litigation." *Id.* at 40 (citations omitted). It also observed that behavior is deemed "vexatious" and, therefore, sanctionable under that statute, "when it is harassing or annoying, regardless of whether it is intended to be so." *Id.* at 41 (citation omitted) (internal quotations omitted). This standard, the court further explained, "necessarily demands that the conduct sanctioned be more severe than mere negligence, inadvertence, or incompetence."

---

16. The court did not address the conduct of Castellanos, individually; it explicitly ruled, however, that there was no evidence that the HOA, itself, was guilty of misconduct.

*Id.* (citations omitted) (internal quotations omitted). Accordingly, citing ABA Model Rule of Professional Conduct 3.2, applicable through P.R. L. Civ. R. 83E(a) and P.R. LBR 1001–1(b), the court noted that attorneys are required "to take all efforts to expedite litigation," *id.* at 41 n. 12:

> Not responding to emails from opposing counsel[ ] that expressly requested an opportunity to resolve a controversy scheduled for a hearing and then, without a courtesy call to them, deliberately withdrawing the motion that creates the controversy only hours away from the hearing, is an unacceptable "disregard for the orderly process of justice", especially from an officer of the court. The court finds that the September 9, 2014 hearing, along with its inherent costs and attorneys' fees, could have easily been avoided had Ms. Quiñones[-]Rodr[i]guez answered the emails and/or phone calls to opposing counsel[ ], who attempted in good faith to avoid the hearing. Therefore, the court finds Ms. Quiñones[-]Rodr[i]guez's conduct sanctionable under 28 U.S.C. § 1927.

*Id.* at 41 (footnotes omitted) (internal citation omitted). In addition, it sided with those courts which "have held that [§ ] 1927 sanctions may be ordered as to the 'firm as a whole' for the conduct of individual lawyers, especially when the court also sanctions under its inherent powers." *Id.* at 42 (citations omitted) (internal quotations omitted).

The court then examined the propriety of sanctions under the doctrine of inherent power, noting the Supreme Court's guidance that the "inherent power to sanction is broad," *id.* (citing *Chambers v. NASCO, Inc.,* 501 U.S. 32, 46, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991)), and "reaches any

abuse of the judicial process." *Id.* (citing *Chambers,* 501 U.S. at 44, 111 S.Ct. 2123). "Hence, [a] court may assess attorney's fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* (citation omitted) (internal quotations omitted). Pursuant to this standard, the court found that Quiñones–Rodriguez's "actions and omissions … constitute[d] dilatory litigation, all of which is sanctionable under th[e] court's inherent power." *Id.*

In view of the foregoing, the court ruled that Quiñones–Rodriguez and the Castellanos Firm were liable, "jointly and severally under Fed. R. Bankr.P. 9011, 28 U.S.C. § 1927, and the court's inherent power, to pay the excess costs, expenses and fees in favor of the FDIC and the Trustee, which is the 'mildest' form of sanctions." *Id.* at 43 (citation omitted). After carefully articulating the standards for determining the amount of sanctions, the court directed the FDIC and the Trustee to submit itemized descriptions of their fees, excess costs and expenses, within twenty days. *Id.* The court granted both Quiñones–Rodriguez and the Castellanos Firm 14 days thereafter to file a response.[17] *Id.*

In compliance with the court's directive, on March 27, 2015, the Trustee filed a motion, requesting sanctions in the amount of $2,667.50, which represented 9.70 hours of work billed at the rate of $275.00 per hour. In support of the request, the Trustee submitted copies of time records, specifying the date, the amount of time expended, and nature of the work performed.

On the same date, the FDIC also filed a motion, seeking court approval of its request for $11,603.10 in fees and costs ($5,804.10 for work performed by Toro

---

**17.** The Castellanos Firm filed a notice of appeal of the March 2015 Order. This notice of appeal represented the Castellanos Firm's first response to the threat of liability for sanctions. We dismissed that appeal as interlocutory.

Colón and $5,799.00 for work performed and costs incurred by Sandell), all of which it claimed were incurred in connection with the Relief Motion. This sum represented a voluntary reduction of the total of $17,407.20 in fees which the FDIC actually incurred. According to the FDIC, in order "to facilitate the Court's determination of reasonableness," it discounted Toro Colón's fees by 50%. In further support of its request, the FDIC submitted as Exhibit A, Sandell's Declaration, in which he affirmed the accuracy of the FDIC's fees and expenses; as Exhibit B, redacted invoices of Toro Colón; and as Exhibit C, the curriculum vitae for the Toro Colón attorneys.

On April 16, 2015, after obtaining a seven-day extension of time, the Castellanos Firm filed its Motion in Compliance with Order and in Oppos[ ]ition to Docket Entry 542–543 (the "Motion in Compliance"), finally confronting the threat of impending sanctions against the firm. Opposing the imposition of sanctions, the Castellanos Firm argued: (1) law firms are not responsible for the signature of their attorneys; (2) § 1927 does not authorize the imposition of sanctions against law firms; (3) individuals who telephone a law firm regarding a pending legal dispute "should be required to call the managing partner of the law firm or the head of the litigation division"; (4) there was no evidence that the Relief Motion was filed to harass or for any other improper purpose, or that its allegations were "utterly implausible"; (5) there was no reason to believe that the September 2014 hearing would require opposing counsel to fly from Texas; (6) Rule 11 sanctions are to be granted "sparingly"; (7) the FDIC and the Trustee failed to comply with Bankruptcy Rule 9011(c)(1)(A)'s procedural requirements; (8) the conduct complained of did not justify § 1927 sanctions; and (9) the Eighth Amendment limits "the steps a government may take against an individual, whether it be . . . imposing monetary sanctions or using cruel and unusual punishments." Based on the foregoing, the Castellanos Firm asked the court to impose a nominal $1.00 sanction and to make a finding regarding the "specific conduct that affected the proceedings," or, alternatively, to vacate the March 2015 Order as clearly erroneous. The Motion in Compliance was devoid of any specific challenge to the bill of costs submitted by either the FDIC or the Trustee.

On April 17, 2015, the court entered an order, granting the FDIC and the Trustee 14 days to respond to the Motion in Compliance. Thereafter, the FDIC filed a motion seeking an order deeming the respective bills of costs submitted by the FDIC and the Trustee unopposed. In support, the FDIC argued the only issue before the court was "simply the amount of the sanction, not whether a sanction should be imposed"; therefore, the FDIC asserted, the bills of costs should be approved and the Motion in Compliance should be stricken as non-responsive.

In addition, the FDIC filed a response to the Motion in Compliance ("Objection to the Castellanos Firm's Motion in Compliance"), in which it repeated numerous of its earlier arguments, and added: (1) Bankruptcy Rule 9011's "safe harbor" provisions were inapplicable, as the sanctioned behavior in this case was not the sort that could be "withdrawn" as contemplated by Bankruptcy Rule 9011; and (2) even if the court concluded that the FDIC had failed to comply with Bankruptcy Rule 9011's safe harbor provisions, § 1927 and the court's inherent powers amply supported a decision to sanction Quiñones–Rodriguez and the Castellanos Firm. The Trustee filed a motion, in which he indicated that he was joining the FDIC's Objection to the Castellanos Firm's Motion in Compliance;

like the FDIC, the Trustee complained that the Motion in Compliance merely amounted to a late request for reconsideration rather than an objection to his itemized fee request.

In its May 22, 2015 consolidated reply to both the Trustee and the FDIC ("the Consolidated Reply"), the Castellanos Firm argued that: (1) they had failed to comply with Bankruptcy Rule 9011's mandatory procedural requirements; (2) the court erred by imposing sanctions on the firm without a finding that the firm had acted in bad faith; and (3) Bankruptcy Rule 9011 sanctions were inappropriate because the HOA had already voluntarily moved to dismiss the Relief Motion.

Thereafter, the court entered the May 2015 Order, whereby it rejected the arguments presented in the Castellanos Firm's Motion in Compliance and the Consolidated Reply, and quantified the costs and attorneys' fees imposed against Quiñones–Rodriguez and the firm:

> The court agrees with the Chapter 7 Trustee and the FDIC. The Castellanos Law Firm's *Motion in Compliance* (Docket No. 558) and *Consolidated Reply to Docket Entries 580 and 581* (Docket No. 585) restate the same arguments that the HOA brought in its *Opposition to the Sanctions* (Docket No. 508), which the court has already considered, analyzed and adjudicated in the *Opinion and Order*. The motions filed by the Castellanos Law Firm do not respond and/or contest the amounts claimed by the FDIC and the Chapter 7 Trustee and/or their reasonableness. *See* the *Opinion and Order* (Docket No. 534, p. 23, lines 8–11).
>
> The *Opinion and Order* entered on March 13, 2015 (Docket No. 534) adjudicated the merits of the request for sanctions. The only matter pending was to determine the amount of the sanctions.

*Id.* The Castellanos Law Firm has not challenged the requests made by the FDIC and the Chapter 7 Trustee. The court has independently reviewed the fees, costs and expenses being claimed and finds the same to be reasonable. Therefore, upon the *Opinion and Order,* Ms. Anabelle Quiñones–Rodr[i]guez and the Castellanos Law Firm are jointly and severally sanctioned in the uncontested amounts of $2,667.50 in favor of the Debtor's bankruptcy estate through the Chapter 7 Trustee, as disclosed in the *Motion in Compliance* (Docket No. 542), and $11,603.10 as disclosed in the *Itemized Description of Fees, Costs and Expenses in Compliance with Court Order* (Docket No. 543), to be disbursed as follows: $5,804.10 in favor of Toro, Colón, Mullet, Rivera & Sifre, P.S.C. and $5,799.00 in favor of the FDIC's in-house counsel, Mr. Jeffrey A. Sandell. Ms. Anabelle Quiñones–Rodr[i]guez and the Castellanos Law Firm are jointly and severally ordered to remit the aforementioned payments within the next 30 days. The Chapter 7 Trustee and the FDIC are hereby ordered to inform the court of such compliance.

*In re MJS Las Croabas Props., Inc.,* No. 12–05710–ESL, slip op. at 3–4 (Bankr. D.P.R. May 27, 2015).

The Castellanos Firm timely appealed the Orders. In its brief, it frames the issues on appeal as whether the bankruptcy court abused its discretion by: (1) imposing Bankruptcy Rule 9011 sanctions against the Castellanos Firm and "bypassing" that rule's procedural requirements; (2) imposing statutory and/or inherent power sanctions against the firm without a finding of bad faith; (3) imposing sanctions on the firm for the actions of Quiñones–Rodriguez, an "independent contractor"; (4) treating the requests for sanctions as "unchallenged"; and (5) imposing an "ex-

cessive fine" against the firm in violation of the Eighth Amendment and the First Amendment. On appeal, the Castellanos Firm attempts to distance itself from the challenged misconduct by arguing that the bankruptcy court sanctioned "a third party [l]aw [f]irm," not the Castellanos & Gierbolini Law Firm, and also by asserting that both Quiñones–Rodriguez and Albino Acosta were independent contractors, whose actions could not be attributed to the Castellanos Firm. The firm further argues that § 1927 does not authorize the imposition of sanctions against law firms.

The FDIC and the Trustee counter with arguments which remain unchanged from their assertions in the proceedings below. Additionally, relying largely on Quiñones–Rodriguez's own statement submitted in the proceedings below, the FDIC and the Trustee reject the notion that Quiñones–Rodriguez was unrelated to the Castellanos Firm.

By motion dated June 26, 2015, the Castellanos Firm sought a stay pending appeal from the bankruptcy court. The bankruptcy court denied the motion, concluding that the Castellanos Firm had failed to establish a likelihood of success on the merits of the appeal. The court rejected the Castellanos Firm's argument that it had been denied the opportunity to answer the charge that the firm had violated Bankruptcy Rule 9011. The court also remained unpersuaded that Quiñones–Rodriguez was simply an independent contractor, unaffiliated with the Castellanos Firm.[18]

The Castellanos Firm has not requested a stay pending appeal from the Panel. *See* Fed. R. Bankr. P. 8007(b). Nonetheless, neither Quiñones–Rodriguez nor the Castellanos Firm has complied with the May 2015 Order.

## *JURISDICTION*

A bankruptcy appellate panel is " 'duty-bound' " to determine its jurisdiction before proceeding to the merits, even if not raised by the litigants. *Boylan v. George E. Bumpus, Jr. Constr. Co. (In re George E. Bumpus, Jr. Constr. Co.)*, 226 B.R. 724, 725 (1st BAP Cir.1998) (quoting *Fleet Data Processing Corp. v. Branch (In re Bank of New Eng. Corp.)*, 218 B.R. 643,

---

**18.** Citing to its order dated April 8, 2015, the court reasoned:

> The foregoing is in direct contrast with the record of the instant case. For instance, in the *Notice of Appearance* filed by Ms. Anabelle Quiñones–Rodr[i]guez on May 16, 2013, she expressly requested that "an appearance by Anabelle Quiñones–Rodr[i]guez, Esq. **from the law firm of Castellanos & Gierbolini be entered"** ... Moreover, in every subsequent motion electronically she signed and filed, her electronic signature was placed underneath the Castellanos Law Firm's information containing the address, telephone number ... and her email ..., belonging to the Castellanos & Gierbolini Law Firm, which subsequently became the Castellanos Law Firm.... Hence, the court concludes that contrary to the Castellanos Law Firm's allegation, the record in this case shows that Ms. Anabelle Quiñones–Rodr[i]guez was affiliated with the law firm. Furthermore, Mr. Alfredo Castellanos Bayouth "owner and founding member of the Castellanos Law Firm" ... has been notified of all motions and orders entered in the lead bankruptcy case since he filed a *Notice of Appearance and Request to Receive Notices* on October 10, 2012 ... on behalf of [a] creditor.... Therefore, he has received electronic notice of all documents filed and entered in the instant lead bankruptcy case, including the motions filed by Ms. Quiñones–Rodr[i]guez as an affiliated attorney *to the Castellanos Law* Firm and the motions relevant to the contested matter on sanctions. In addition, Mr. Alfredo Castellanos Bayouth also informed this court that his law firm represents the [HOA], as does Ms. Quiñones–Rodr[i]guez, through the *Informative Motion Notifying Vacations and Moving of the Firm* filed on December 12, 2014....

645 (1st BAP Cir.1998)). A panel may hear appeals from final judgments, orders, and decrees. 28 U.S.C. § 158(a) and (b); *see also In re Bank of New Eng. Corp.*, 218 B.R. at 645 (citation omitted). "A bankruptcy court's order imposing sanctions ... is a final, appealable order where, as here, it resolves all of the issues pertaining to a discrete claim." *In re Hermosilla*, BAP No. MB 11–045, 2011 WL 6034487, at *2 (1st BAP Cir. Nov. 14, 2011) (citations omitted); *see also Schwartz–Tallard v. America's Servicing Co. (In re Schwartz–Tallard)*, 473 B.R. 340, 346 (9th BAP Cir.2012) (citation omitted), *aff'd*, 803 F.3d 1095 (9th Cir.2015); *Lafayette v. Collins (In re Withrow)*, 405 B.R. 505, 511 (1st BAP Cir.2009) (citations omitted); *White v. Burdick (In re CK Liquidation Corp.)*, 321 B.R. 355, 361 (1st BAP Cir. 2005) (stating an "order imposing [Bankruptcy] Rule 9011 sanctions is final when the matter out of which it arose becomes final") (citation omitted). Here, the Relief Motion has been withdrawn and the amount of sanctions has been quantified. Accordingly, we have jurisdiction.

## STANDARD OF REVIEW

Appellate courts apply the clearly erroneous standard to findings of fact and de novo review to conclusions of law. *In re Hermosilla*, 2011 WL 6034487, at *3 (citing *Lessard v. Wilton–Lyndeborough Coop. Sch. Dist.*, 592 F.3d 267, 269 (1st Cir.2010)). "A bankruptcy court's imposition of a sanction typically embodies a judgment call, and, thus, review is for abuse of discretion." *Charbono v. Sumski (In re Charbono)*, 790 F.3d 80, 85 (1st Cir.2015) (citations omitted). "[A]ppellate panels traditionally give district courts considerable leeway in the exercise of the latter's admitted authority to punish ... litigants." *Young v. Gordon*, 330 F.3d 76, 81 (1st Cir.2003) (citation omitted) (affirming district court's order of dismissal for

noncompliance with discovery order). "This standard is not appellant-friendly, and a sanctioned litigant bears a weighty burden in attempting to show that an abuse occurred." *Jensen v. Phillips Screw Co.*, 546 F.3d 59, 64 (1st Cir.2008) (citation omitted) (internal quotations omitted). "To shoulder that burden, the sanctioned litigant must establish that the sanctioning court ignored a material factor deserving significant weight, or that its decision rested upon an improper factor, or that it considered all the appropriate factors but made a serious mistake in weighing them." *Id.* (citation omitted) (internal quotations omitted).

## DISCUSSION

### I. The March 2015 Order

#### A. The Bankruptcy Court's Power to Sanction, Generally

"The 'American Rule' is that each party bears its own attorney fees and litigation expenses." *New Eng. Surfaces v. E.I. DuPont de Nemours & Co.*, 558 F.Supp.2d 116, 122 (D.Me.2008) (citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975)). "Narrow exceptions to the American Rule exist under the Federal Rules of Civil Procedure, some statutes, and the court's inherent power." *Id.* Pursuant to these exceptions, a court may assess attorneys' fees as a sanction. *See Chambers*, 501 U.S. at 45, 111 S.Ct. 2123. "Sanctions stem, in part, from a need to regulate conduct during litigation." *Goya Foods, Inc. v. Wallack Mgmt. Co.*, 344 F.3d 16, 20 (1st Cir.2003) (citing *Chambers*, 501 U.S. at 53, 111 S.Ct. 2123). "Thus, a sanction may properly have a punitive aspect," *id.* (citation omitted), in addition to its "compensatory effect." *Chambers*, 501 U.S. at 53, 111 S.Ct. 2123 (citation omitted) (internal quotations omitted).

■■■ "The bankruptcy court has the power to sanction ... pursuant to (1) Fed. R. Bankr. P. 9011; (2) its inherent power; and (3) 28 U.S.C. § 1927...." *Sunshine Three Real Estate Corp. v. Housman (In re Sunshine Three Real·Estate Corp.),* Adv. No. 09–01330, 2010 WL 1541428, at *2 (Bankr.D.Mass. Apr. 15, 2010) (footnote omitted). The Supreme Court has warned, however, that a court must "exercise caution" when invoking its inherent power and "ordinarily should rely on the Rules...." *Chambers,* 501 U.S. at 50, 111 S.Ct. 2123. It added that if "neither the statute nor the Rules are up to the task, the court may safely rely on its inherent power." *Id.*

Here, the bankruptcy court ruled that all three of the above sources of authority supported an award of sanctions. However, one court of appeals has observed that "the analysis in *Chambers* 'leads to the conclusion that if statutory or ·rules-based sanctions are entirely adequate, they should be invoked, rather than the inherent power.'" *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,* 278 F.3d 175, 189 (3d Cir.2002) (quoting Gregory P. Joseph, *Sanctions: The Federal Law of Litigation Abuse,* 428 (3d ed.1999)). Because "the preferred method of sanctioning is by rule or statute," we begin with an analysis under § 1927. *Theokary v. Abbatiello (In re Theokary),* 468 B.R. 729, 745 (Bankr.E.D.Pa.2012) (citing *Chambers,* 501 U.S. at 50, 111 S.Ct. 2123; *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,* 278 F.3d at 189; *Martin·v. Brown,* 63 F.3d 1252, 1265 (3d Cir.1995)); *see also In re Charbono,* 790 F.3d at 88 ("The admonition that 'courts [are] to be cautious in using their inherent power to sanction' remains true.") (citing *United States·v. Romero–López* 661 F.3d 106, 108 (1st Cir.2011) (citing *Chambers,* 501 U.S. at 44, 111 S.Ct. 2123).

## B. Imposition of Sanctions Pursuant to § 1927

### 1. Section 1927's Requirements

"Unlike Rule 11 and Bankruptcy Rule 9011, which are lengthy and impose specific procedural requirements with which a party seeking sanctions must comply, § 1927 is short and clear...." *In re Schaefer Salt Recovery, Inc.,* 542 F.3d 90, 101 (3d Cir.2008) (citing 28 U.S.C. § 1927). It provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. "Although courts are divided as to whether bankruptcy courts have jurisdiction to award sanctions under 28 U.S.C. § 1927, the United States Court of Appeals for the Third Circuit and courts in this district have ruled that the bankruptcy court has such authority." *In re Sunshine Three Real Estate Corp.,* 2010 WL 1541428, at *3 (citing *In re Schaefer Salt Recovery, Inc.,* 542 F.3d at 105 (concluding the bankruptcy court has authority to sanction under § 1927); *Stone v. Casiello (In re Casiello),* 333 B.R. 571, 575 (Bankr.D.Mass.2005) (same); *In re Lincoln North Assocs., Ltd. P'ship,* 163 B.R. 403 (Bankr.D.Mass.1993) (same)); *see also In re Royal Manor Mgmt., Inc.,* 525 B.R. 338, 365 (6th BAP Cir.2015) (same) (citation omitted).

■■■ The "plain language of [§ 1927] restricts its operation to acts that 'multipl[y]' the proceedings." *Jensen,* 546 F.3d at 65 (quoting 28 U.S.C. § 1927). In the First Circuit's view, Congress' use of the verb "multipl[y]" in the text of the

statute "clearly contemplates that, to be sanctionable thereunder, conduct must have an effect on an already initiated proceeding." *Id.* Litigation conduct qualifies as "vexatious" within the meaning of § 1927 if it is " 'harassing or annoying, regardless of whether it is intended to be so.' " *Lamboy–Ortiz v. Ortiz–Vélez* 630 F.3d 228, 245 (1st Cir.2010) (citation omitted). The First Circuit has also explained that § 1927 "does not apply to '[g]arden-variety carelessness or even incompetence,' but instead requires that the 'attorney's actions … evince a studied disregard of the need for an orderly judicial process, or add up to a reckless breach of the lawyer's obligations as an officer of the court.' " *Id.* at 245–46 (citation omitted).

 "The purpose of sanctions under § 1927 is to deter dilatory litigation practices and to punish aggressive tactics that far exceed zealous advocacy." *In re Royal Manor Mgmt., Inc.,* 525 B.R. at 365 (citations omitted) (internal quotations omitted). "Unlike Rule 11 sanctions which focus on particular papers, the inquiry under § 1927 is on a course of conduct." *Bowler v. U.S. Immigration and Naturalization Serv.,* 901 F.Supp. 597, 605 (S.D.N.Y.1995) (citation omitted). As the Sixth Circuit aptly explained, "[t]here must be some conduct on the part of the subject attorney that trial judges, applying the collective wisdom of their experience on the bench, could agree falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party." *Rathbun v. Warren City Schs. (In re Ruben),* 825 F.2d 977, 984 (6th Cir.1987).

 Although some courts of appeals have construed § 1927's language, "unreasonably and vexatiously," to require a finding of subjective bad faith as a predicate to the imposition of sanctions, the First Circuit has not. *Cruz v. Savage,* 896 F.2d 626, 631–32 (1st Cir.1990) (stating "we do not require a finding of subjective bad faith" to justify § 1927 sanctions) (citations omitted). In assessing whether an attorney acted unreasonably and vexatiously, the First Circuit instructs courts to apply an objective standard. *Id.* at 632. "[C]ommon sense suggests that [the trial judge] must be accorded wide latitude in drawing inferences as to when multiplication of the proceedings crosses the line between what is acceptable if tedious and what is unreasonable and vexatious." *Jensen,* 546 F.3d at 67. "Distinguishing between what is a vigorous but reasonable attempt to salvage a case that is going badly and a stubbornly capricious attempt to gain advantage by prolonging matters is not easy." *Id.* "The unique position occupied by a trial judge gives her an intimate familiarity with the ebb and flow of the cases on her docket." *Id.* "Appellate courts recognize, therefore, that they must defer in large measure to a trial judge's first-line authority for case-management decisions." *Id.* (citation omitted) (internal quotations omitted).

## 2. Whether the § 1927 Standard Applies to Law Firms

 Section 1927 applies to "[a]ny attorney or other person admitted to conduct cases in any court of the United States…." 28 U.S.C. § 1927. The statute does not expressly provide for vicarious liability. Ira Leesfield and Mark Sylvester, 2 *Litigating Tort Cases* § 20–19 (2014). Therefore, we are confronted at the outset with a threshold legal issue, namely, whether a federal court may impose liability on law firms, as a whole, as well as individual attorneys within the firm, pursuant to § 1927. The Castellanos Firm argues § 1927 does not authorize the imposition of sanctions against a law firm.

There is a split among the circuits on this issue. The Second, Eleventh, Eighth, Third, and District of Columbia Circuits have imposed § 1927 sanctions on law firms. *See, e.g., Enmon v. Prospect Capital Corp.*, 675 F.3d 138, 147 (2d Cir.2012) (finding "no reason" to refrain from holding a law firm liable under § 1927 and stating "we would upset a relatively long-standing practice among district courts in our Circuit if we were to hold that law firms may not be sanctioned under § 1927 for the acts of certain attorneys") (citations omitted); *Smith v. Grand Bank & Trust of Fla.*, 193 Fed.Appx. 833, 838 (11th Cir. 2006) ("[T]his court has implicitly determined that § 1927 applies to law firms."); *Lee v. First Lenders Ins. Servs., Inc.*, 236 F.3d 443 (8th Cir.2001) (affirming district court's sanction against a law firm under § 1927); *LaPrade v. Kidder Peabody & Co.*, 146 F.3d 899, 907 (D.C.Cir.1998) ("[W]e hold that the district court had jurisdiction to impose sanctions [under § 1927] upon [the law firm] and that in so doing it did not abuse its discretion...."); *Baker Indus., Inc. v. Cerberus Ltd.*, 764 F.2d 204, 212 (3d Cir.1985) ("[W]e conclude that the district court properly imposed attorneys' fees and costs against [the] Cravath [firm] under [ ] § 1927."). A number of district courts have likewise relied on § 1927 to sanction law firms. *See, e.g., Gurman v. Metro Hous. & Redevelopment Auth.*, 884 F.Supp.2d 895, 912 (D.Minn.2012) (imposing sanctions against law firm pursuant to § 1927); *Sangui Biotech Int'l, Inc. v. Kappes*, 179 F.Supp.2d 1240, 1246 (D.Colo.2002) (same); *Brignoli v. Balch Hardy & Scheinman, Inc.*, 735 F.Supp. 100, 102 (S.D.N.Y.1990) (same).

As one district court reasoned:

The latter term, "personally," in particular might be thought to militate against the use of 28 U.S.C. § 1927 to sanction a law firm. However, once it is considered that the sanction provision is targeted exclusively at attorney conduct, as opposed to the actions of an irresponsible client, ... the use of the term takes on a rather distinctive meaning of ensuring that it is the attorney personally (and not the party) who is taxed the costs of satisfying the award the court has imposed to cover the additional costs attributable to the vexatious lawyering conduct

....

Moreover, the statutory provision's reference to any attorney "or other person admitted to conduct cases" discloses an intended focus of the legislation on the regulating of those entities who "conduct cases," a statutory class or category into which law firms naturally fall. It is not surprising then that although no decision has been unearthed specifically addressing the matter of law firm sanctionability under § 1927, courts implicitly have upheld the practice where appropriate. *See Apex Oil v. Belcher Co. of New York, Inc.*, 855 F.2d 1009, 1020 (2d Cir.1988) (affirming district court's award of § 1927 sanctions against large law firm); *Calloway v. Marvel Entertainment Group*, 854 F.2d 1452 (2d Cir. 1988) (reversing, on grounds unrelated to sanctioned entity's status as law partnership, an award of sanctions under § 1927), *rev'd on other grounds sub nom. Pavelic & LeFlore v. Marvel Entertainment Group*, 493 U.S. 120, 110 S.Ct. 456, 107 L.Ed.2d 438 (1989).

The language of § 1927 ... does not therefore disfavor requiring a law firm that is "conducting cases" in a court in a manner that multiplies the proceedings unreasonably and vexatiously to "satisfy personally" the fees and costs reasonably incurred "because of such conduct." 28 U.S.C. § 1927.

*Brignoli*, 735 F.Supp. at 101–02.

On the other hand, the Ninth, Seventh, and Sixth Circuits have declined to sanc-

tion law firms pursuant to § 1927 for the conduct of the firms' attorneys. *See, e.g., Kaass Law v. Wells Fargo Bank, N.A.,* 799 F.3d 1290, 1295 (9th Cir.2015) (stating if "Congress had intended to permit federal courts to impose sanctions against law firms pursuant to [ ] § 1927, it would have included an express authorization to do so in the statute"); *FM Indus., Inc. v. Citicorp Credit Servs., Inc.,* 614 F.3d 335, 340 (7th Cir.2010) ("Liability under § 1927 is direct, not vicarious.") (citation omitted); *Rentz v. Dynasty Apparel Indus., Inc.,* 556 F.3d 389, 396 n. 6 (6th Cir.2009) (stating § 1927 does not authorize the imposition of sanctions on a law firm) (citation omitted); *Claiborne v. Wisdom,* 414 F.3d 715, 723 (7th Cir.2005) (declining to impose § 1927 liability on a law firm, reasoning that "[i]ndividual lawyers, not firms, are admitted to practice").

Although the First Circuit has not explicitly authorized the imposition of § 1927 sanctions against a law firm, it did so implicitly in *Jensen, supra.* There, the First Circuit reviewed a district court's imposition of sanctions against a law firm under § 1927 without ever stating or intimating that law firms were beyond the statute's reach, and remanded the matter for reasons unrelated to this issue. *See Jensen,* 546 F.3d at 68. In addition to the First Circuit's tacit approval of a court's ability to impose § 1927 against a law firm, we find the reasoning of *Brignoli, supra,* and cases similarly decided, persuasive. We, therefore, conclude that the bankruptcy court did not err when it ruled that § 1927 permits sanctions against law firms.

### C. Section 1927 and the March 2015 Order

▆ With respect to § 1927, the bankruptcy court specifically found "Quiñones[-]Rodriguez's actions display[ed] a disregard for the orderly process of justice, not negligence, inadvertence or incompetence." Although the bankruptcy court did not make a specific finding regarding the "multiplication of proceedings," the record firmly establishes that the sanctioned conduct, especially Quiñones–Rodriguez's refusal to respond to numerous telephone calls and emails over the course of several weeks, and her eleventh-hour filing of the Withdrawal Motion without warning, all contributed to the need for the filing of opposition papers and to conduct the September 2014 Hearing, which could have been obviated.

▆ This is not to suggest that counsel for a litigant who changes strategy is invariably at risk. Indeed, the First Circuit has acknowledged that "a party can turn on a dime [and] change his mind ... without any fault attaching to his counsel." *Jensen,* 546 F.3d at 66. Moreover, the appropriate inquiry under § 1927 is "on a *course* of conduct." *Bowler,* 901 F.Supp. at 605 (emphasis added). Additionally, § 1927 "is concerned only with limiting the abuse of court processes." *Roadway Exp., Inc. v. Piper,* 447 U.S. 752, 762, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980). As the Eleventh Circuit stated, "there must be some causal connection between the conduct and the continuation of proceedings that otherwise would not have occurred." *Smith,* 193 Fed.Appx. at 838 (citation omitted).

In the proceedings below, the bankruptcy court found that it was Quiñones–Rodriguez's cumulative behavior that was sanctionable. *See In re MJS Las Croabas Props., Inc.,* 530 B.R. at 41. Indeed, the record reflects that her steadfast, unjustified refusal over a period of several weeks to respond to repeated written and telephonic communications, all imploring an out-of-court resolution, followed by her last-minute Withdrawal Motion, necessitat-

ed an otherwise avoidable hearing and appearances by the Trustee's and HOA's counsel. This course of conduct evinced a "cavalier disregard for both the [c]ourt and h[er] colleagues' time," thus warranting the imposition of sanctions. *Hawkins v. Major Electric & Supply, Inc. (In re Hawkins),* 163 B.R. 422, 423 (Bankr.D.R.I.1994) (sanctioning counsel for similar behavior, albeit, without citing § 1927). The behavior which the bankruptcy court found offensive is precisely the type of behavior targeted by § 1927. *See Lamboy-Ortiz,* 630 F.3d at 245–46 (stating § 1927 applies to actions which "evince a studied disregard of the need for an orderly judicial process, or add up to a reckless breach of the lawyer's obligations as an officer of the court").

■ In reaching this conclusion, we are mindful that the First Circuit affords the trial judge "wide latitude" in distinguishing between vigorous representation and stubbornly capricious conduct, given his/her familiarity with his/her own docket. *Jensen,* 546 F.3d at 67. Moreover, the pattern of conduct at issue in the instant appeal is clearly distinguishable in character and severity from a single, obstinate, or careless failure to respond to a telephone call or letter. As striking as Quiñones–Rodriguez's refusal to communicate and her precipitous filing of the Withdrawal Motion is the Castellanos Firm's failure to justify the offending conduct when repeatedly warned of the threat of impending sanctions against the firm. The Castellanos Firm remained silent when confronted with the FDIC's Response to the Withdrawal Motion, the Trustee's Sanctions Request, the October 2014 Sanctions Orders, and the FDIC's Reply to HOA's Opposition. Even the court's admonition from the bench at the September 2014 Hearing that it was inclined to grant the pending requests for sanctions, which included a request for sanctions against the Castellanos Firm, did not elicit a response from the firm. Quiñones–Rodriguez's intransigence was equaled only by the Castellanos Firm's indifference. Indeed, the filing of its first notice of appeal (which we dismissed as interlocutory) marked the Castellanos Firm's belated involvement in this fray.

Furthermore, the Castellanos Firm's argument that it had no way of knowing that Sandell was traveling from Texas for the September 2014 Hearing does not excuse the refusal to confer, telephonically or otherwise, regarding the Relief Motion. Quiñones–Rodriguez's only proffered excuse for her silence, namely, that the firm was in the process of moving, similarly fails to justify the lack of communication over an approximate three-week period. Like the bankruptcy court, we also are unpersuaded by the Castellanos Firm's argument that Quiñones–Rodriguez was an independent contractor whose actions could not be attributed to the firm. This claim is belied by her signature on the papers she filed in the proceedings below, which consistently reflected that she was affiliated with the firm. Moreover, the Castellanos Firm failed to provide any support for the characterization of its relationship with Quiñones–Rodriguez as that of an independent contractor and also failed to request an evidentiary hearing on this issue.[19] On

---

19. The factors relevant to the determination of whether a worker is an independent contractor or employee include:

[T]he hiring party's right to control the manner and means by which the product is accomplished ...; the skills required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion

this record, we have no difficulty in concluding that the challenged conduct unreasonably and vexatiously multiplied the proceedings. Based on the foregoing, we hold that the bankruptcy court acted well within its discretion when it imposed sanctions on the Castellanos Firm pursuant to § 1927.

As we need affirm the March 2015 Order on only a single ground, our scrutiny of the March 2015 Order ends here. We do not extend our analysis to Bankruptcy Rule 9011, as that rule "applies only to written papers filed with ... the court, and does not govern the conduct of litigation more generally." *Lamboy–Ortiz*, 630 F.3d at 245 (citations omitted). Nor do we reach the question of whether inherent power sanctions were appropriate, having concluded that § 1927 is "up to the task." [20] *See Chambers*, 501 U.S. at 50, 111 S.Ct. 2123 (instructing that reliance on inherent power is "safe[ ]" if "neither the statute nor the Rules are up to the task").

## II. *The May 2015 Order: the Amount of Sanctions*

 On appeal, the Castellanos Firm complains that the amount of the sanctions imposed by the May 2015 Order is "inherently ... excessive" in violation of the Eighth Amendment, whose purpose, according to the firm, is to "limit ... fines directly imposed by and payable to the

Federal Government." The Castellanos Firm also argues that the challenged sanctions interfere with the firm's "First Amendment right to petition the Government for the redress of grievances." We reject these arguments for a number of reasons, including: (1) the sanctions imposed against the Castellanos Firm did not constitute a fine payable to the government, but, rather, were payable to the litigants for wasted time and efforts; (2) the sanctions were a properly invoked remedy under § 1927 for the reasons previously stated; (3) the sanctions were compensatory to reimburse the parties' time spent; and (4) the Castellanos Firm had multiple opportunities to air its grievances in the bankruptcy court proceedings and ignored them.

Furthermore, in the proceedings below, the Castellanos Firm neglected to object to a single line item of the fees requested by the FDIC or the Trustee, nor did it challenge the method for determining the amount of sanctions which the court articulated in the March 2015 Order. Moreover, the Castellanos Firm offered no concrete challenge to the reasonableness of the fees claimed, the rate sought, or the time expended. Thus, the Castellanos Firm has failed to demonstrate that the May 2015 Order was an abuse of discretion.

over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.
*Alberty–Velez v. Corporacion de P.R. Para La Difusion Publica*, 361 F.3d 1, 7 (1st Cir.2004) (citations omitted) (internal quotations omitted). The Castellanos Firm never argued or demonstrated the presence of any of these factors.

**20.** We note, however, were we to reach this issue, the bankruptcy court's failure to make an explicit finding of bad faith would be problematic. *See In re Charbono*, 790 F.3d at 88 (stating a finding of bad faith is a prerequisite for the imposition of inherent power sanctions); *see also Galanis v. Szulik*, 841 F.Supp.2d 456, 461 (D.Mass.2011) ("Should a court choose to exercise its inherent sanction power, it 'must describe the bad faith conduct with sufficient specificity, accompanied by a detailed explanation' of the reasons justifying the issuance and the amount of the award.") (citation omitted).

## CONCLUSION

Based on the foregoing, the Orders are hereby **AFFIRMED**.